NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIUS J. GED,<br><br>        Plaintiff,<br><br>        v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br>et al.,<br><br>        Defendants. | CIVIL ACTION NO. 14-734 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

## INTRODUCTION

Defendants, American Security Insurance Company ("ASIC") and Select Portfolio

Servicing, Inc. ("SPS") (collectively, "Defendants") separately move for summary

judgment in their favor.  (Dkt. 52; dkt. 54.)[1]  Plaintiff, Marius J. Ged ("Ged") opposes

those motions.  (Dkt. 53; dkt. 56.)  The Court, for the reasons that follow, will grant

summary judgment in favor of ASIC and SPS.

## DISCUSSION

## I.    FACTUAL HISTORY

### A.    The Parties

Ged "is a citizen of the State of Florida who … reside[s] … [in] Parkland, Florida

…." (Dkt. 1-1 at 4.)  ASIC is "an insurance company or entity duly organized in the State

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring
to the docket entry numbers by the designation of "dkt."  Pincites reference ECF pagination.

of Delaware, selling and issuing policies of flood insurance within the State of New

Jersey." (Id.)  SPS "is … a corporation engaged in the mortgage servicing business

within the State of New Jersey." (Id.)

### B.      The Property and Insurance Policy

Ged owns a house located at 6 Stoney Road, Point Pleasant Beach, New Jersey

(hereinafter "the Property").  (Dkt. 1-1 at 3.)  SPS was the designated servicer of the

mortgage for the Property on or about December 1, 2011.  (Id. at 5.)  SPS managed the

mortgage under the account number 0012883146.  (Id.)[2]

ASIC issued a residential flood insurance policy ("the Policy"), bearing the

number FLR0755826688, to SPS on February 29, 2012.  (Dkt. 52-12 at 1.)  The Policy

covered the Property, and identified SPS as the "Named Insurance Mortgagee[.]"  The

Policy also listed Ged as "an additional insured[.]"  (Id.)  ASIC mailed a copy of the

Policy to Ged at an address in Plantation, Florida.  (Dkt. 52-11 at 9.)

SPS, as a Named Insured Mortgagee, paid the Policy's annual premium of

$1,816.20 in monthly installments.  (Dkt. 52-12 at 2.)  The following terms governed

cancellation of the Policy:

1.      Cancellation

    a.  Coverage under this Policy shall automatically and without prior
       notice, cancel when the named insured no longer has an interest
       in the described location or when the named insured has been
       provided with another policy that meets the requirements of the

---

[2] SPS "was the mortgage servicer and attorney-in-fact for Wells Fargo Bank, N.A., as trustee, on behalf of the holders of the HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1, which … was the holder of the Promissory Note and Mortgage in connection with a mortgage loan that Ged had secured with respect to the Property[.]" (Dkt. 54-1 at 11.)

named insured as set forth in the mortgage agreement applicable
to the described location.

   b.  This Policy may also be cancelled by the named insured by
returning it to us or notifying us in writing of the date
cancellation is to take effect.

   c.  We may cancel this Policy by mailing notice of cancellation to
the named insured at the address shown on the Additional
Insured Endorsement or by delivering the notice not less than 30
days prior to the effective date of cancellation.

(Dkt. 52-10 at 17 (emphasis omitted).)

Pursuant to the terms of the Policy, SPS, as the Named Insured Mortgagee, was
"authorized to act for … Additional Insured(s) in all matters pertaining to [the] insurance
including receipt of Notice of Cancellation …." (Dkt. 52-10 at 6.)

**C.     Short Payoff Settlement**

Ged and SPS negotiated a short payoff settlement of the mortgage on the Property
from January 2012 through July 2012. (Dkt. 54-4 at 4–5.) Ged offered SPS $375,000.00
to satisfy the mortgage via e-mail dated June 8, 2012. (Dkt. 54-3 at 81.) SPS, in
response to Ged's offer, sent Ged a proposed Short Payoff Agreement ("SPA") via letter
dated July 3, 2012. (Dkt. 54-2 at 27–29.) The SPA advised Ged that SPS "agree[d] to
accept [his] proposed Short Payoff [of $375,000.00] and … release the lien on the
[P]roperty …." (Id. at 27.) The SPA required Ged to pay "an amount not less than
$375,000.00 no later than July 23, 2012 …." (Id.)

The SPA, which was the only document that governed the short payoff settlement,
stated that "[u]pon satisfaction of all terms of this approval, the mortgage [would] be

discharged in its entirety with any deficiency rights waived, and a lien release document [would] be forwarded ….."  (Id. at 28; see also dkt. 54-1 at 16.)

The terms of the SPA did not address the Policy.  (Dkt. 54-2 at 27–29.)  Ged accepted the terms of the SPA, and paid SPS $375,000.00 shortly thereafter.  (Dkt. 54-1 at 17.)

**D.      Cancellation of the Policy**

SPS, upon executing the SPA, informed ASIC that Ged paid his mortgage in full effective July 16, 2012.  (Dkt. 52-12 at 2.)  ASIC then proceeded to cancel "the Policy in accordance with instructions from SPS[.]"  (Id.)  ASIC refunded SPS $79.81, as a portion of the unearned premium for the month of July 2012.  (Id. at 3.)[3]

ASIC forwarded a cancellation notice via letter dated July 26, 2012 ("7-26-12 Cancellation Notice").  (Dkt. 52-10 at 6, 29.)[4]  The 7-26-12 Cancellation Notice read, in relevant part, as follows:

> The Named Insured Mortgagee/Lender has requested cancellation of the lender-placed insurance that was issued in compliance with your mortgage/lien agreement.  This cancellation is effective at 12:01 a.m. on [07-16-2012].  The reason for this cancellation is:
>
> Named Insured's Request.  You have paid off your loan and the mortgagee/lender no longer has an insurable interest in the [P]roperty.

---

[3] With respect to the cancellation of the Policy, "ASIC had no communications or dealings with … Ged at any time concerning his short payoff [settlement] of the mortgage on the Property." (Dkt. 52-12 at 3.)

[4] The 7-26-12 Cancellation Notice was addressed to "Marius J Ged" at an address in Plantation, Florida.  (Dkt. 52-10 at 29.)

If you have any questions, please feel free to call your mortgage lender ….

(Dkt. 52-10 at 29.)

### E.   Superstorm Sandy

The Property sustained flooding damage during Superstorm Sandy on October 29, 2012.  (Dkt. 1-1 at 3.)  Ged "filed an insurance claim [with ASIC] … seeking compensation for direct loss by flood" in February 2013.  (Id.; see also dkt. 52-11 at 11.)[5]  Ged claimed he was "required to demolish the … Property and rebuild in order to return the home to pre-loss condition and comply with local zoning requirements."  (Dkt. 1-1 at 5.)

ASIC informed Ged "that it was unable to confirm that there was any coverage in force for the Property on … October 29, 2012 …."  (Dkt. 52-11 at 11.)  ASIC, upon further reviewing the claim, issued a letter dated February 13, 2013 ("2-13-13 Letter") to Ged.  (Id. at 12.)  The 2-13-13 Letter informed Ged "that ASIC had been unable to locate

---

[5] Ged contends "that he[:] (1) specifically discussed and was advised by SPS representatives that the … [P]olicy would remain in force through the end of the [P]olicy term; (2) was never advised during the entire time that the mortgage transaction was being negotiated that the [P]olicy would be cancelled; and (3) did not receive notification that the [P]olicy was cancelled until after October 29, 2012, inasmuch as the purported notices from ASIC and/or SPS were never delivered to [him]."

(Dkt. 56 at 3.)

Ged concedes, with respect to the first two contentions, that he "cannot demonstrate the existence of a verbal or written agreement with SPS for the alleged continuation of the … [P]olicy or any other extrinsic evidence to establish the terms of such an agreement."  (Id.) Accordingly, the Court will not consider those contentions.  First Atl. Leasing Corp. v. Tracey, 738 F.Supp. 863, 867 (D.N.J. 1990) ("In opposing summary judgment, the nonmoving party cannot rely upon the allegations of his pleadings.  He must come forward with evidence to show that there is a material fact in dispute….").

5

any active policy for the reported date of loss of October 29, 2012, given that the Policy

terminated before the date of loss upon the short payoff of … Ged's loan." (<u>Id.</u>)  This

action followed.

## II.    LEGAL STANDARD: MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure ("Rule") 56 governs motions for summary

judgment.  <u>See</u> Fed.R.Civ.P. 56(a).  Pursuant to Rule 56(a), a federal district court "shall

grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  <u>Id.</u>  The movant

has the initial burden of proving the absence of a genuinely-disputed material fact

regarding the claims at issue.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 331

(1986).  The nonmoving party, in response, must "go beyond the pleadings and by her

own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial."  <u>Id.</u> at 324

(internal citation and quotation omitted).  Material facts are those "that could affect the

outcome" of the proceeding, "and a dispute about a material fact is genuine if the

evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving

party."  <u>Lamont v. New Jersey</u>, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and

quotation omitted).  Summary judgment is "proper if, viewing the record in the light most

favorable to the non-moving party and drawing all inferences in that party's favor, there

is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law."  <u>United States ex rel. Kosenske v. Carlisle HMA, Inc.</u>, 554 F.3d 88, 94

(3d Cir. 2009).

### III.    APPLICATION OF LEGAL STANDARD

Ged asserted the following claims against ASIC and SPS in the complaint: (1) "COUNT I – DECLARATORY JUDGMENT"; (2) "COUNT II – BREACH OF CONTRACT"; (3) "COUNT III – FAILURE TO PROVIDE NOTICE"; (4) "COUNT IV – NEGLIGENCE"; (5) "COUNT V – CONVERSION"; (6) "COUNT VI – FRAUD"; and (7) "COUNT VII – NEGLIGENT MISREPRESENTATION[.]"  (Dkt. 1-1 at 8–17.) Ged now admits that "he has no evidence to support his claims for conversion, fraud, negligent misrepresentation, and negligence."  (Dkt. 53 at 3.)  Thus, according to Ged, Defendants are entitled to summary judgment on those claims.  (Id. at 11; see also dkt. 56 at 16.)

Ged further concedes that "[t]he sole remaining issues for determination by this Court pertain to the breach of contract and [the] [P]olicy cancellation."  (Dkt. 53 at 3; see also dkt. 56 at 3.)  Accordingly, the Court will grant summary judgment in favor of ASIC and SPS on Count IV, Count V, Count VI, and Count VII of the complaint.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").  The Court now considers the parties' arguments regarding the remaining claims, set forth in Count I, Count II, and Count III of the complaint, below.

#### A.    Ged's Arguments

Ged alleges that Defendants failed to provide: (1) coverage warranted under the Policy; and (2) "proper notice of cancellation[.]"  (Dkt. 53 at 3.)  According to Ged, "there are genuine factual disputes regarding[:] (a) whether [Ged] is a third-party

7

beneficiary under the Policy issued by ASIC to SPS and, if so, whether [Ged] was

entitled to proper notice of cancellation; (b) whether the [P]olicy was properly cancelled;

(c) whether [Ged] received proper notice of the cancellation, and if not[;] (d) whether

Defendants are estopped from denying coverage." (Dkt. 56 at 5–6.)  However, Ged

concedes that the SPA "did not confer any rights to him with respect to the Policy."  (Id.

at 6.)  Ged also admits that "there was no contract directly between [himself and]

ASIC[.]"  (Id.)

     Ged contends that the Policy was effective on October 29, 2012 on the grounds

that he was: (1) an additional insured under the Policy; and (2) a third-party beneficiary

under the Policy.  (Dkt. 56 at 6–11.)[6]  According to Ged, payments made "on the Policy

---

[6] Ged argues that several of the Policy's terms demonstrate the parties' intent to protect his
interest in the Property.  Ged references the following terms in relevant part:

II – DEFINITIONS

   A.  Throughout this Policy you and your refer to the named insured, (Mortgagee)
       and the additional insured (Mortgagor) shown in the additional insured
       endorsement.

K.  Loss Payment

  1.  We will adjust all losses with the named insured.  Payment for loss
      will be made within 60 days:
      a.  After we reach an agreement with the named insured, and;
      b.  There is an entry of a final court judgment; or
      c.  There is a filing of an approved award with us.
  2.  Loss will be made payable to the named insured and the additional
      insured as their interest appear, either by:
      a.  A single instrument so worded, or;
      b.  By separate instruments payable respectively to the named insured
         and the additional insured, at our option.

(Dkt. 56 at 10; see also dkt. 52-10 at 9, 18 (emphasis omitted).)

as part of his monthly mortgage payment to SPS …. demonstrate that the Policy was intended to confer a direct benefit to him and as such he is entitled to third-party beneficiary status …." (Dkt. 53 at 9.)  Ged also argues that ASIC had an obligation to: (1) verify his address; and (2) forward the 7-26-12 Cancellation Notice to his verified address.  (Id. at 10.)[7]  Thus, Ged argues, with respect to the 7-26-12 Cancellation Notice, that "there is a genuine dispute as to whether [Ged] was provided with effective notice" by the cancellation of the Policy.  (Dkt. 56 at 11.)

### B.    ASIC's Arguments

ASIC argues that Ged "cannot maintain a claim for insurance coverage against ASIC … because the Policy terminated more than three months before the date of the loss[,]" thereby extinguishing SPS' interest in the Property.  (Dkt. 52-11 at 6; dkt. 55 at 4.)  With respect to the 7-26-12 Cancellation Notice, ASIC argues, inter alia, that it "fully complied with its notice obligations by sending Confirmation of Cancellation to the named insured, SPS, which had full authority under the Policy terms to receive notices of cancellation on behalf of [Ged], the additional insured."  (Dkt. 52-11 at 7.)  Thus, according to ASIC, it was relieved "of any obligation to send notice of termination because the named insured, SPS, requested termination of the Policy."  (Dkt. 55 at 4.)

---

[7] Ged argues "that he was entitled to proper notice of the cancellation but never received such notice because his permanent and only address was listed incorrectly in the Policy and the [7-26-12 Cancellation] Notice was also mailed to the wrong address."  (Dkt. 53 at 3.)  Ged claims that he never lived at the address listed in the Policy, and further states that "[i]t remains unclear how the wrong address was even associated with [him.]"  (Id.)

See also <u>supra</u> Sec.I.B.[8]  ASIC also cites to the Policy term stating that "[c]overage under

this Policy shall automatically and without prior notice, cancel when the named insured

no longer has an interest in the described location" to support its argument that the 7-26-

12 Cancellation Notice was valid under the terms of the Policy.  (Dkt. 52-10 at 17; <u>see</u>

<u>also</u> dkt. 55 at 4.)  <u>See also</u> <u>supra</u> Sec.I.B. (describing the Policy terms governing

cancellation).

### C.   SPS' Arguments

SPS argues, <u>inter alia</u>, that Ged was not a third-party beneficiary under the Policy

because after SPS and Ged executed the SPA, "SPS no longer had an insurable interest in

Ged's home …." (Dkt. 57 at 14–15.)  According to SPS, "New Jersey law would have

prevented SPS (and therefore Ged) from pursuing a claim for the 2012 flood damage to

Ged's property, regardless of whether SPS formally cancelled the [P]olicy in July 2012,

because SPS ceased to have an insurable interest after the short payoff settlement in July

2012." (<u>Id.</u> at 15.)  SPS also argues that "[e]ven if SPS's coverage under the … Policy

had not terminated as a matter of common law as a result of the short payoff settlement

… and even if SPS had not sent ASIC a request to cancel the … Policy in July 2012, SPS

still would not have had coverage under the … Policy for a loss in October 2012 based on

the unambiguous terms of the [P]olicy." (<u>Id.</u> at 15–16.)  SPS, in support of that

argument, cites to the Policy term governing cancellation, which states that "[c]overage

---

[8] ASIC argues in the alternative that "even if the Policy had not relieved ASIC of any obligation
to provide notice of cancellation, ASIC still provided proper notice of cancellation by sending
such notice to the named insured, SPS." (Dkt. 55 at 5.)  <u>See also</u> <u>supra</u> Sec.I.B. (describing the
Policy terms governing cancellation).

under this Policy shall automatically and without prior notice, cancel when the named insured no longer has an interest in the described location ….” (Id. at 16.)  See also supra Sec.I.B. (describing the Policy terms governing cancellation).

### D.    Analysis

The Court finds no dispute of material fact as to whether the Policy was effective on October 29, 2012, the date of Ged’s claimed loss.  The Court, upon reviewing the terms of the Policy and giving “the language a rational meaning in keeping with the expressed general purpose” of the Policy, finds that ASIC issued the 7-26-12 Cancellation Notice pursuant to the Policy terms.  Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006).  Moreover, Ged provides no evidence to persuade the Court that: (1) ASIC was required to verify his address pursuant to the terms of the Policy; or (2) he was a third-party beneficiary under the Policy.[9]  Accordingly, the Court finds no genuine dispute of material fact regarding the claims at issue, and will therefore grant summary judgment in favor of ASIC and SPS on all remaining counts of the complaint.  Celotex Corp., 477 U.S. at 322–23, 331.

---

[9] Ged cites to one case – Alvarado v. Lexington Insurance Co., 389 S.W.3d 544 (Tex. Civ. App. 2012) – to support the argument that he is a third-party beneficiary under the Policy.  (Dkt. 53 at 6–8.)  The Court finds that case inapposite to the facts here, because the Plaintiff in Alvarado pointed to terms of the policy at issue demonstrating that the policy was “clearly intended to benefit him[.]”  Alvarado, 389 S.W.3d  at 556.  Ged points to no such evidence in this action.

**CONCLUSION**

The Court, for the above-stated reasons, will grant summary judgment in favor of

ASIC and SPS.  The Court will issue an appropriate order and judgment.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


**Dated:** May 26, 2016